Good afternoon, and may it please the court. This case is about the tragic and entirely preventable death, suicide, of 33-year-old high school teacher Brian Peterson. He took his own life because he knew that his arrest for the online solicitation of a minor would ruin his life and prevent him from pursuing the career that he loved, even though he knew he could prove his innocence if it had been taken to trial. All of the appellees here are responsible in their own way and were prematurely dismissed below by the Honorable Judge Hughes. First, Detective Dunn unconstitutionally arrested Brian despite knowing that Brian's actions did not meet key elements of the online solicitation statute, but went on to unconstitutionally search Brian's phone, take it into evidence, and prosecute Brian for a higher crime than was possible. Well, I missed it, maybe you can give me the site. In the suicide note, I didn't see anything about the taking the phone. So in the, so record on appeal, it's in the 280s. We also included Detective Dunn's police report where he detailed the actions. I understand that, but he didn't say whether there was consent or not. And he also didn't say whether it angered Peterson or anything like that. So I mean, the suicide note really explains all that we can know about kind of what happened. It's not in there, is it? It's not in the suicide note, but what is in the police report is that Brian did not give consent to the search. And it was in the police report that his phone was brought into evidence, was taken away and brought into evidence. But it was... Tell me specifically what the police report says about no consent being given. Right. I thought it just said that he sort of got the phone and located the Grindr app. Yeah, that's what I thought too. Right. So it said that he got the phone, located the Grindr app to find the discussion, which is it itself. So where does it say there was no consent? Read that to me, please. Right. So it is in the record on appeal on... Apologies, Your Honors. I didn't have that specific record site close to me, but we do know that there was no consent given to the search and that the police report does have the chronological order of the events that happened. I'm looking at, I guess, Officer Dunn's statement. It says, I got the driver's cell phone and located the Grindr app displayed. Right. The conversation that's at issue was also displayed on the app, which helps us to possibly identify Peterson. Where does it mention consent? Is that what you're talking about as far as mentioning consent, Dunn's report? No, it is subsequent to that. So ROA 260-61 is the specific citation of that. And what we have quoted here is that after Mr. Peterson's conversation with Detective Dunn, it says that Brian, quote, did not want to give consent to search his phone, which was taken away and placed in evidence. And in addition to, even to the extent that, you know, the whole seizure of the phone afterward of being placed into evidence, the extent to which the phone was searched on the scene is itself an unconstitutional search that can be considered by this court because And I'm looking at 260-261 and that's what Judge Wilson just read about the driver's looking around, blah, blah, blah, you know, and then they found him and then I got the driver's cell phone and located the Grindr app displayed. The conversation between Peterson and I was also displayed on the app, which helped us positively identify Peterson as our suspect, my suspect. Okay, then it said that after that was when they didn't want to, he didn't want to like take it with him, but that's a little different from whether the search right then was not consented. The taking it is different from the looking at it because that was then I read Peterson's Miranda rights and he refused to talk about it. So after the Miranda rights, then he refused to take a polygraph and didn't want to search the phone at that point, but that's after they've already arrested him. That, that's correct. Okay. And during the, and during the arrest itself, there was, um, as you mentioned your honor, there was no specific lack of consent as to the search of the phone, but there, there also wasn't consent given. So the, the search of the phone incident to the arrest, um, under the standards in Riley versus California, the officer can take it and take the phone and see what's displayed. But beyond that, that's where a warrant would be required and probable cause would be required to look at the contents of the phone. But they took the phone. Correct. Okay. So that's okay under Riley to take the phone. Correct. It's the later review, but we don't know when that happened, right? We do know that there was a review, uh, that there was, there were actions taken to look at the contents of the phone by detective Dunn on the scene. That, that's where, where he says when he took the phone and located the Grindr app. Right, right, right. Okay. Let's go in order. Correct. Okay. We have the, I looked at the Grindr app. We don't know if that was popping up as he just picked up the phone and looked at it and that helped him decide this is the guy I've been talking to. He arrested him. He gave him his Miranda, whatever he said. And then at that point, Peterson says, I don't want you to search my phone. They take the phone. Okay. And later, I think it was searched, but we don't know whether that was before or after the suicide, et cetera, et cetera. We don't know what that had to do with anything. So how is this actionable? Standing alone. Right. Because I know you have the argument about the arrest and all that. I get that. But the standing alone, the illegal search, how is that actionable? The, the actionable, the actionable part of the search itself has to do with the search of the contents on the phone on the scene. Okay. Because that led to the arrest, right? Correct. He just looked at the phone and then he walked off. What would it be here, right? It was because of the arrest that everything else transpired. Right. And the arrest is what he claims qualified immunity to, right? Correct. Okay. So in analyzing, if you will, the qualified immunity of the arrest, we do have to look at that as part, part and parcel, this alleged illegal search of the phone. Correct. Okay. Correct. And, and the, the qualified immunity does speak to specifically the, the constitutionality of the arrest rather than the constitutionality of the search. While those two are, are related as, as legal claims because they share facts that are, are relevant to each other. The, the only, and, and this was just, there was a dispute about this in the briefing, of course. The appellant's view is that qualified immunity was only raised as to the arrest itself. So. But what I'm saying is you can't really divorce the two because the reason that you are challenging the search in the car is that it led to the arrest. It's all part and parcel. So claiming qualified immunity to that arrest has to analyze, you know. Correct. What he did with the phone. So it's all tied together. So the notion that somehow qualified immunity was waived, it's a little hard for me to comprehend given what we're talking about. As opposed to an independent search of the house and then an independent arrest and so on and so forth. I understand there can be circumstances where they're different.  Well, where the, where kind of the line is, is the, the standard for probable cause in qualified immunity according to this court in Bev versus Dorman is whether or not there was arguable probable cause. And, and that's where appellants overcome qualified immunity as to the arrest. All right. Let's, let me maybe take a different tack a bit from what Judge Haynes is, is asking you. Assume the search is illegal. I mean, in other words, the allegations in the complaint kind of indicate and, and so does Dunn's statement that the app wasn't there in plain view to give a shorthand. Right? So assume he got the phone and he started tapping on things and that would be, I think, a search. Right? Maybe. So just assume that. Right. Put, put the search aside. So what you have then pre-arrest is this conversation on Grindr that Dunn's having with, it turns out, Peterson. And then you have the behavior of the car in the sonic parking lot and driving around and I'll be right here and then the car comes right here. In other words, you've got this conduct. Is that enough for probable cause for the arrest, even putting the, the, the purported search of the phone to the side? Right. So, so if I'm understanding your, your question correctly is, you know, provided that, that the, the Grindr messages alone and the, the, the actions of the car. Yes. If that was enough for, for the crime, would that be enough for probable cause? It, the, the contest is, is as to whether the, the, the Grindr messages constituted probable cause. And that, that's where the answer is no. But, but if they did, then, then yes, the, the arrest probably. How could the answer no though? I mean, the solicitation is done at the time it's made, correct? In other words, the crime's complete. It, it looks like he's soliciting a minor at 14 or... Right. So that, that's, that's what Mr. Peterson was arrested for. However, a look at... But that's what you're contesting because you said that he kind of backed off and said, well, we'll just talk and whatever. So you said that he kind of backed off the notion of sex with the minor. Right. Not, beyond just backing off, the, the, the Grindr messages contain effectively proof positive that, that the, the act of solicitation in terms of the, the act of requesting and following through with a meeting was clarified by Peterson at the request of Dunn for the purpose of just talking and not for the purpose of sex. While there was sex discussed elsewhere in the chat, the purpose of the meeting by the time it took place was clearly and only for the purpose of just talking. Dunn knew that, Dunn clarified that and had proof positive that, that the purpose of the meeting was to just talk. And to the extent that, that proof is of, of the intent to just talk and not solicit sex, that is a key element of the statute that was not met. So... Okay, but, well, the problem with probable cause is, you know, people have all kinds of discussions. They talk about, oh, let's have sex. And then the person goes, well, do you really mean that? Oh, well, no, no, let's just talk. You know, and that can kind of lead down the road. So, I mean, I, I don't know that just, that, that just because there was a little bit of a backing off that that means there wasn't a solicitation at least at the probable cause level. I think where he liked, you know, Peterson would have had a good chance of winning. He, he instead committed suicide. I mean, it's very sad, I'm not suggesting otherwise, but he did not seek to win. That, that's correct that he did, that he did choose to commit suicide instead of seeking to win in court. But the, the fact of the matter is, even if he had won in court, he wouldn't have, at least from his perspective, been able to get his... No, and I understand it. But there's a, the other thing is, so when we look at kind of the two, the sort of survival case and the wrongful death case, the wrongful death case, there has to be evidence that it caused the death. And I don't see any evidence that the alleged illegal search caused the death, since it's not even mentioned in the suicide note, except to the extent it caused the arrest, and we're back down that road. Right? So how is there a wrongful death case for an illegal search? Right. So the, the wrongful death case is, is for the effect of, of the entire arrest. But, but beyond... I just wanted to backtrack a little bit to what, to what Your Honor said with respect to the probable cause determination based on the, the content of, of the chats. Probable cause in this case is, is fairly unique because in cases like, my friends on the other side cited in their 28J letter that they filed a week ago in Lofton and Stokes, just as an example, this is a case where all of the evidence, all of the information that was available to the officer was in part created and controlled by the officer. So... Counsel, one of the problems I have with the, with the way you structured this is I don't know where you're going with a, with a wrongful arrest argument. The Fourth Amendment argument. I don't know if you had an independent 1983 lawsuit on that basis alone. Or were you, you also had the argument with regard to the search of the phone. I understood that. But... You know, the question is that this man has committed suicide and you, you've got a, you know, fairly straightforward 1983 suit for wrongful arrest with a qualified immunity issue. And, you know, you also got this claim against the county because the man took his own life after he left the jail. I don't see how you put those pieces together. And I'm not hearing you articulate that. Um, would you mind just rephrasing the, the nub of the question that you're trying to get at just with respect to... My question is, is this a 1983 suit for a wrongful arrest, period? Or is this a suit for wrongful... against the county for failure to take care of this, this prisoner that they had taken in to effect, which caused his death? So this case is a 1983 case against Detective Dunn. It's a Monell case against the city of Conrail. I understand the, I understand the difference in the counties, that's another problem. But I'm just trying to see what your claim is. The, where the wrongful, where the wrongful death comes in and where really the, the... The liability with respect to the death itself primarily involves the WellPath appellees insofar as, you know, we've pled medical malpractice and negligence on their behalf as well as the 14th Amendment claim against them. So the, the liability stemming from the death primarily relates to those parties as opposed to as much Detective Dunn. Detective Dunn, the primary thrust of the case is the 1983 case for the wrongful arrest. Okay. Do you have more questions? Your side has reserved time for rebuttal. Your colleague will be doing that. Thank you. Okay, so now we'll hear from the city of Conrail et al. with Mr. Viata. Good afternoon, may it please the court. I'm here for Mr. Dunn and the city of Conrail. We're here on an appeal from a 12B6 dismissal and so the WellPath factual allegations have to be considered in light, most favorable to the plaintiff. However, there are things that have been attached to the pleadings that become part of the pleadings and one of those is Detective Dunn's incident report. There are some citations that were made earlier concerning what sort of a search and seizure occurred at the time that they pulled the car over. And there's nothing there that says that search at the time the car was pulled over was not consented or, I mean, other than their pleading in the case, but I'm just saying in that report, it comments on the later when he wanted to take the phone and search it in full as opposed to look at the Grindr app and see if this is the same guy. Yeah, that's correct. He pulls up. I mean, it is plausible that Peterson would have had the phone. He was in the process of texting the person he thought was Jason. Yeah, so it would be in his hand and it would be on the Grindr app. There it is. So it's not that shocking that he might have seen that it's the Grindr app they've just been talking with. And it's the instrumentality. But his report said, I got the driver's cell phone and I located it on the Grindr app display, which tells me that he got the phone, then he had to conduct a search. Now, where that takes you is a different matter, but... Does the word located necessarily mean that you did something different on the... Well, that's the question. Well, that is the question. What does located mean? Yeah, he picks up the phone. He locates it. There it is. And he sees it. It's his text messages. Okay, we got the right guy. But you'll agree, counsel, or maybe you won't, if I pick up the cell phone and locate... If locate means I tap a couple things and open them, that's a search, is it not? Could be, yes. Could be. And it's a warrantless search at this point. To access the screen as opposed to simply looking at the screen could be a search. You can locate it by just picking up the phone and it pops up, right? Yeah, so that is... You know, that language is not crystal clear. What is he looking at? He's looking at a... Confirming that the chat that he has just had, that he was in the process of having with the suspect, was him. He's able to identify the individual. Which is completely, I think, okay if it's sitting there on the phone's open screen. Or like, as Judge Haynes said, it's in his hand and there's the message thread. A little more questionable if it's not and he had to unlock the phone or tap an app or two and go into the Grindr app after he'd located it. And we don't know at this point. So does the tie go to the plaintiffs on a 12b6? We don't have that. That's not part of our record. For me to explicate what the facts are would... But as far as tying all this together on probable cause and qualified immunity, it does matter. Because once you've asserted qualified immunity, they have to show a question of fact, a material fact issue. Qualified immunity here has been asserted with respect to the whole thing. The whole motion was based on qualified immunity in connection with the... They said you didn't say enough about illegal search. That's what we're trying to understand. To me, it's all synced together. It's not an independent... The later review of the phone might have been independent. But this looking at the Grindr app, whether you tapped or you just looked, that was tied with the arrest, right? Yeah, if it's... If it's... If the, uh... If accessing the Grindr app to connect him to the crime was what was necessary to obtain probable cause or, on the immunity side of it, arguable probable cause, then it can matter. I guess under some fruit-of-the-poisonous-tree type doctrine that if he doesn't have probable cause, but has to obtain a fact through some illegal means to get it, does that vitiate qualified immunity on probable cause? I mean, it's apparent based on his behavior as described in the report. You know, he's driving around, you know, that they're emailing him, they see the car, you know, he's coming by, he looks suspicious, so they definitely have reason to stop him. He's got the phone, they can seize the phone. I mean, they've got probable cause, arguable probable cause, in my view, to stop. Uh, that they... That takes... That would take you quite clearly to the 1983 suit against the individuals that are here itself. Um... But the case is confusing because of this arrest issue, et cetera, suit against the officers, and then the suit against the county itself. Um... The other question I had was whether there is independent probable cause as suggested earlier by my colleague that to actually take it. They didn't need further probable cause, assuming it is a search of the phone, but they had probable cause to do so on the record that goes before it. Uh, that way we don't have to resolve what located means. He, um... It's clear from the additional documents in the police report, and I can point you to the pages, but what you also see is that at the station, after Peterson is arrested, there is a request to do a search of the phone, and Peterson refuses to allow that. Uh, the phone that is taken into evidence, and then you see that after Peterson has already died, there's a request that was made, and this is... At this point, the case was, I guess, abated forever. The abate ab initio, I guess, is the way to put it. You know, when somebody dies and the criminal charges are just left hanging there. He, uh... Dunn is asking the district attorney for authorization to do a search on the phone, and that's in the record, that there had not... It's apparent from that that there had not already been a search done on the phone, that here he is long after Dunn's... Or long after Peterson's dead, Dunn asking for authorization to look at the phone for the purpose of determining whether there was other child pornography or other messages with other children, and so we don't know how that turned out. We don't know whether or not it was granted. We don't know... At least on this record, we don't. And I will volunteer it, because... But I'm also kind of wondering this notion... So it was before he was arrested and all of that, there's this grabbing the phone, and if he was in fact searching around in the phone, I mean, he would have... How would he log in? How would... I mean, there's just a lot of issues there. None of that is mentioned in the suicide note. So how did that cause his death, other than contributing to the arrest? That's a different question, but just independently, the notion that the illegal search itself caused the death, I don't see how that's supported by the evidence. The argument that these defendants have made is that the arrest didn't cause the death either. No, I understand that, but I'm talking to the allegedly... If the phone, picking it up and clicking on it was some kind of illegal search, it wasn't even mentioned, unless I missed it, in the suicide note. It's not. Okay, and so it's not something that had any impact on him, other than it confirmed that he was the person that had been talking on Grindr, and that is what the contention has led to the suicide, that he was arrested. But had there just been a review of the phone and then Dunn got out of the car and went home, I don't see how that would have done anything. It has no causal relationship with the death. What the suicide note makes clear is that I'm a schoolteacher, these charges are filed, my career will never be the same. And so it seemed to me that where he was going with it and the reason why he was straining to make a malicious prosecution claim out of it is to say that the charge filing is somehow or another actionable so that he could say that he would have a prospect of reputational harm and so committed suicide to avoid the prospect of reputational harm. So he's trying to roll a potential reputational injury to his decision to commit suicide. Let me ask this. What if they had arrested the wrong person? There were two people driving around in a loop and they ran up to this other guy who turned out and they didn't look at the phone, they just arrested that person who had nothing to do with the Grindr discussion at all. And then that person committed suicide. What would be the effect there? Would that be actionable under 1983, just a mistaken arrest? Well, I mean, the argument that I've made is that these self-destructive impulses under the common law... You know, the common law of 1871 is kind of the basic ground floor for determining what Congress meant when it passed 1983. And they looked at basic common law principles of proximate cause, and we've seen that the common law in 1871 did not countenance a recovery in tort for people committing suicide absent very special and limited circumstances, that you can't, in a sense, make yourself into a victim for the benefit of your family by committing suicide, and that it's, you know, it's considered an intervening cause or it's considered not foreseeable as a matter of law, but there are some fairly stringent common law limitations on the ability to off yourself and then make your relatives rich on the theory that you've been bothered by suicide. Well, they're never going to be rich even if we reverse and send it back and they get an award. Obviously losing a son is a terrible thing, however it got there. But even assuming arguendo there's not a wrongful death case or there's still a survival case, he was in prison for a day or two if he was falsely arrested. So do you want to address this issue of the conversation that kind of went from seeming to walk down the sex road to kind of backing up a little more to the talk road? Yes, and the brief covers it, but it seemed to me that there was at the outset of this, again, and appellants make the point that context is king, so you have this grinder app which is notorious  child solicitation and I cited a gazillion cases or not a gazillion, but a bunch of cases appellate cases where people have been arrested for solicitation and for child molestation and that's your context that people hook up there for sex that there's this discussion about age he's 14, he sends a picture of this obvious looking young boy they talk about how experienced he is he knows how to take it and so then they agree to meet it's the request to meet as Texas provides this crime the gravamen of the crime is committed upon solicitation so all the walking back toward at the end where he's still by the way is saying that this is really risky the age difference and all that sort of stuff so he's still sending off signals that he believes he's dealing with a minor and that this is not just a sex fantasy game where he's pretending to be a child molester he's actually pretending all too well and it gets him arrested so that's our take on that that there's conversation once 14 it's not like oh by the way we're playing an age game here he doesn't throw up any kind of a context to suggest that hey this is just a fantasy we're just having fun You've got just a few seconds to tell us about the Monell what about the notion that they're just having people run around trying to arrest everybody and their brother for child A couple of points about Monell we've seen in the Radcliffe's versus Aransas County that the pleading standards of Tuamali and Iqbal apply you can't just throw out oh they had a custom and it was all ratified and tied up in a neat little bow where you just give us legal elements and that suffices secondly the Longoria case basically says that if you're going to try to make the argument that there was some delegation you have to state facts showing that the policy maker actually made a delegation you just can't throw a conclusory allegation on that in that regard that's a recent opinion so those two cases by themselves I believe take it out of Monell Judge Hughes was correct in deciding that there's no cause of action stated against the city on some very globally pled custom or ratification type incidentally ratification's not even mentioned in the pleading as I pointed out in my brief it showed up in the response to the motion to dismiss but it still doesn't apply Thank you we've got your argument and we'll now hear from I'm not sure I'm not sure I can pronounce it correctly Knudson Knudson for WellPath Ed Owell My name's Chris Knudson I represent the remainder of the Appalese WellPath Southwest Correctional Southwest Correctional and Bridget Johnson during my time before the court I planned to address the lack of duty that was owed by my clients to Mr. Peterson when he committed suicide at his own home two days after So you're saying their duty is only while he's in prison Correct Your Honor But what did they do? They didn't do anything while he was in prison or while he won Other than just asking some questions and sending them home Correct Your Honor What's been pled is that Bridget Johnson during the time of booking did her initial screening and completed a suicide prevention form They don't allege that he or even that he was wrongly accused. None of that's been pled and so in booking they go through the screening and then they're sent kind of to wherever the county decides they need to go within the jail and that was it and 24 hours later he was bailed out and then two days later is when he committed suicide and so they brought claims against my clients under So what if he had committed suicide or injured himself by that day, would then your notion of what your clients are responsible for be different? Correct Your Honor. I think then we kind of pivot away from the duty and then it goes to The cause Correct. Or it goes to whether they have pled a deliberate indifference standard and I think to meet the deliberate indifference and standard which is what you have to satisfy when asserting a medical claim in 1983 as this court has recognized several times it's an extremely high standard you basically have to show that the individual here would have been Ms. Johnson, the ENT had subjective knowledge of a substantial and serious risk that the detainee might commit suicide and that defendant never the less disregarded that risk so Mr. Peterson What about the medical malpractice? That's the state law claim. I understand that. I'm well aware but that's still before us. Correct Your Honor So what about it? So in that piece they have pled medical malpractice in order to plead a medical malpractice claim you have to allege a standard of care that applies to the situation. The complaint is completely devoid of a standard of care It has some very conclusory allegations of breaches, failure to properly care, things like that and then you have to establish causation which we've discussed a little bit today causation has cause and fact and foreseeability elements. They haven't pled anything that would have led to Counselors, I understand their basic case that the county and the officials should know that it was a high suicide risk this is a 38 year old man unmarried public school teacher he's going down with a lifetime brand of a sexual predator. He's gone his career is gone and suicide though reflects that. What he's trying to do is to tell his family that I was a soliciting a minor So I'm asking the question of what obligation does the county have? The complaint is saying that there is such a high risk of self destruction on these facts that you have an obligation to do more. Maybe I'm just stating the argument but that's the best I can make out of it. Your Honor kind of what we had alleged in the brief is that if everybody thought they were wrongly accused and that makes them a suicide risk I think everybody in jail would be suicide risk and the county couldn't afford the level of care that would be necessary but on the state law claim they also have to establish cause and fact and the Supreme Court of Texas held in Providence Health Care versus Dow that it can be too attenuated the events and the suicide can be too attenuated. In that case an individual went into an ER, complained that he was having suicidal ideations they discharged him. 33 hours later he committed suicide. Supreme Court found that was too attenuated a time gap to find here. Here Mr. Peterson committed suicide something more than 48 hours and then there's an intervening cause issue. And he did not say he was suicidal. No he did not according to the pleadings and not according to what's actually in the form that was submitted. Well it's not before the court. So he did not tell anybody he was suicidal at the jail. And we only had him for 24 hours. This isn't like somebody who's been there for months and months and you know you put him in on suicide watch and you take him off and then they commit suicide. Well the screening happened I guess at the beginning of that 24 hours relatively speaking. In other words your client's contact with him happened what 72 hours before he actually committed suicide. Correct Your Honor. We don't know when he came up with this idea that he was gonna commit suicide. I don't know if he had that idea during those 24 hours or afterwards when he's thinking about the repercussions. We just don't know that and nobody's gonna ever know that. And that's an important part on the causal chain is that if he didn't have suicidal ideation while he was with us we couldn't really done anything to prevent it anyway. Even though we don't have a duty to you know provide continuing care or make sure that inmates were receiving continuing care after that. So it's for these reasons Your Honor that we are asking that the court uphold the district court's opinion with regard to my clients. Okay. Thank you. We appreciate your argument and we'll now hear the rebuttal. Good afternoon Your Honors. Randall Callinan here. A couple things I wanted to clear out clear up from my colleagues, my associates initial argument. I would like to point out to the search of the phone. First of all I want to point out we are not claiming that the search of the phone caused the death. We're claiming that this was a false arrest even if everything in the phone was correct. This is a separate cause of action for whatever damages result from an illegal search of a phone. And it So that would only be the survival claim because you have to show for wrongful death claim, you have to show it caused the death. Your Honor, it's the other things that caused the wrongful arrest, not the search of the phone. Okay. It's the other things that were untruthful. And one thing we left out is that Officer Dunn called  and he's a 39 year old man and he called him and left him a message. And a 39 year old man sounds like a 39 year old man. I mean he claims that he sounded different. This is not a motion to dismiss your Honor. I understand that but you know the notion that I sound like a woman. But I could sound like a man. I could sound like a kid. You know we the notion of that I mean we can't say for sure that just because you leave a phone call that means it vitiates the claim for solicitation of a minor. And if the standard was to make all reasonable inference and favor defendants, you would be exactly correct. No, no. What I'm saying is the notion that you will never have probable cause if you've left a phone message would really cross out a lot of cases. That's what I'm saying. The phone message, remember this is solicitation of a minor. A minor, by the way, which is defined as under 17 not the usual under 18 but under 17 by the statute. And furthermore, the statute is very, very severe. I mean towards the people trying to convict. It says knowingly, not recklessly or anything else, but knowingly that the defendant must knowingly meet, first they have to believe the person is of certain age. That's a requirement. I guess what I'm saying, I just want to be clear. Is there a case that says if the person who's not a minor but is a police officer pretending to be one has left a phone message there cannot be probable cause to arrest? Oh, no. There's no case that says that one single thing. But you've got to look at the totality of this case and the many things we bring up in, that we reference in the brief. And then for qualified immunity purposes why would Dunn have to know that having left a message that he thinks sounds like a kid, maybe didn't and I understand we can't determine that but that he thinks that, why is that somehow evidence of lack of or evidence against qualified immunity? The Fifth Circuit as well as the United States Supreme Court has stated for the longest of time you must have a probable cause. And now the state of Texas has hundreds and hundreds of laws with, each one has elements so you don't because maybe this is maybe the first case where this particular law is at issue does not have anything to do with qualified immunity because of course that would mean there are literally maybe thousands of qualified immunity cases where there's no probable cause. But I did want to get back to the search of the phone and the search of the phone it says, this is Dunn's testimony, I got the driver's cell phone located the Grindr app displayed now everybody's got a cell phone, I've got one here on my desk the screen is blank until you press it that's the beginning of the search what else would it be for? Why would an officer press a screen unless he's searching for something? And he even says he located the Grindr app. Well but it doesn't necessarily, just because so sometimes your phone is silent but if you are in the middle of a bunch of texting it might also have the text sitting there but an app as we all know is just a symbol I understand that but if you're in the app then the app is up it says he located the Grindr app and then also this discussion is multiple screens, on your screen you can only have like one sentence or two that means he must have went flip, flip, flip to go through it to see if that is the he did all that searching in order to find this information um so it was definitely a search, it meets the criteria for a search and uh by the way, I did want to point out But how is that a cause of how is that an independent event the search let's assume, arguing though it's an illegal search the only thing it contributed to is the arrest that you all claim is illegal, which I understand but if it's not right and that's what I brought up it wasn't an independent search that you know damaged his house or something like that with or without what was found on the phone with or without that there was no probable cause for his arrest based on the totality of the circumstances why did they not already have probable cause before they picked up the phone well because once again the law is very strict, it must state that he must knowingly be requesting a meet for sex, I mean there's a whole bunch of requirements of the statute to meet and Dunn is the arrestor, he is the detective who has been doing this all the time he's very well aware of all of the elements of this particular crime and when you look at the strict law that this is he does not meet the criteria and once again this is not a motion to dismiss, a jury could decide that there wasn't the probable cause in this case and because it's a totality of the facts circumstances and one could argue that the reason that Dunn finally left the message was to show that he was an adult so come on down and I could make my arrest so Dunn was could see he was hesitant and so he left his adult voice and remember that Dunn they don't have this recording anymore so one can assume that something so important to the criminal prosecution, if it was helpful, he would have it why would an experienced detective not keep the voice message that when he directly talked to the individual this is not just a police officer, run of the mill patrol officer not that patrol officers are run of the mill but he was an experienced detective in this particular arena and he would have known the importance of keeping that but instead he got rid of it and on the motion to dismiss stage we can a reasonable inference is that he knew that that would disprove the fact of the crime you've used your time, thank you appreciate both sides arguments in this case is now under discussion